MAMIE HALL, AS EXECUTRIX OF THE WILL OF R. S. HALL, DECEASED, *Appellant*, v. C. W. HUNTER, *Appellee*.

Division B.

Opinion Filed April 6, 1926.

*H. M. Hampton*, Attorney for Appellant;

No appearance for Appellee.

PER CURIAM.—This suit seems to have been initiated by appellee, C. W. Hunter, for the purpose of stating an account between him and the Ocala Gas Company but was concluded by the statement of an account between appellee and Mamie Hall as Executrix of the estate of R. S. Hall, deceased.

The court has spent much time and labor analyzing the pleadings and testimony, all of which are involved and in some aspects of the case impossible of reconciliation. It appears that some time in 1909 the predecessor of the Ocala Gas Company was in a state of bankruptcy, all of its assets being owned by appellee. R. S. Hall was at the time living and was induced to come to the rescue of the failing Company under an agreement between him and appellee. The business of the Company was carried on under this agreement till August, 1912, when the Ocala Gas Company was organized and what purporetd to be a settlement between Hall and Hunter took place, each taking one-half interest in the new Company.

The business of the Ocala Gas Company was conducted by Hall and Hunter as equal owners from the settlement in 1912 to 1917, when the entire stock of the Company was sold. A final settlement of all the affairs of the Gas Company was then attempted but Hall and Hunter apparently failed to get together on that and Hall died November 20, 1919. This suit was commenced December 21, 1920. A special master was appointed to state an account between appellant and appellee, which showed $1948.01 with inter-

est to be due Hunter, for which amount final decree was entered. Appeal is taken from said final decree.

Appellant contends here that the claim of Hunter is barred by laches and the statute of limitations and if not so barred, it was error to allow the personal gas account of Mr. Hall, the amount for piping the Harrington Hall Hotel, interest on office expense and interest on mortgage coupon. A great many other items are embraced in the statement of account but no others are objected to.

A review of the great mass of accounts and figures embraced in the statement of account could serve no useful purpose at this time. The record discloses something due from the estate of Hall to Hunter. We are of the opinion, however, on the whole showing made that the personal gas account of Hall prior to the 1912 settlement and the amount for piping the Harrington Hall Hotel should not have been allowed by the chancellor. These amounts fully accrued prior to the 1912 settlement, which may not have been in all respects regular, at the same time these items must have been contemplated in the said settlement which was subsequently recognized by Hunter. For these reasons and others apparent on the record and the further fact that death has sealed the lips of Hall the decree must be reversed as to these two items. The record discloses no reason why they should now be counted against Hall's estate and appellee has not seen fit to favor us with a brief showing any.

The decree of the chancellor is therefore reversed as to the charge for personal gas account of Hall prior to the 1912 settlement and the amount for piping the Harrington Hall Hotel and it is affirmed in all other respects.

Affirmed.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur.

BROWN, C. J., AND ELLIS, J., concur in the Conclusion.